Opinion op the Court.
BY the ‘last will of William Findley, sen.'deceased, devised to his son, Cyrus Findley, one hundred acres of land, and by a clause in his will directed, “ that his son, John Fii\dley, should take care of Cyrus1 land until Cyrus sho.uld come of age,” (he being then an infant,) “ though not to use it in any other way than for the support of the family.”
After the death of the ■ testator, Samuel Wilson settled upon the land devised to Cyrus, and after making' some improvements thereon, sold his interest to one Houseworth for two ¡hundred dollars, at the same time stipulating with Houseworth that he should quietly enjoy the same free from rent until Cyrus Findley should arrive' at full age. Subsequent to this, under a pró-eeeding-for a forcible entry and detainer, instituted by John Findley, to whom the care of Cyrus’ land was confided during his minority by the testator, Houseworth was expelled from the land.
Wilson then refunded to Houseworth the amount received under the contract of sale to him, and exhibited his bill in equity against John and Cyrus Findley, to obtain compensation for the improvements made by him on the land of Cyrus. He charges, that William Findley, the brother of both John and Cyrus, was regularly appointed guardian for Cyrus, and that he settled and improved the land under a parol contract , made with William, the guardian, through the advice and consent of John, that he should enjoy the possession and profits of the land until Cyrus become of age, in consideration of improvements which he agreed to make thereon; that the contract was made in 1813, and Cyrus Findley would not.be of age until 1820, and though^, no writings.were executed, it was agreed that the con-í rad should be reduced to writing in a short 1 ime, and *392 that, in tbe meanH1me,<jhe; §Sfrnuel, was to take the pos« session and erect a:]iotítb where John Findley should which was. aé‘Gordingly done. He also charges, that the improvements made by him, are worth, at least, two hundrefk dollars, and sets out the sale by him to House wo tjjaj - aj|d the dispossession of Houseworth by John Findlay; alleges that John Findley has since Jéa'spffoqi¿|b;¿ land and received the rents, and has in his possession the. money of Cyrus, sufficient to pay for the injprp^njents. He moreover alleges, that William Findlay,thp guardian, is déad, and,asks a decree against Jehhiapd^Cyrus for the amount of improvements.
There was a devise ofland jr <díe'1San infhnFwith ' directions in the will, that should earo of the' land until ^
. . Jojm .Was appointed guardian ad litem for Cyrus, and nnsyeffeddhe.bill both for himself and Cyrus. He ad-nrits ¡that a contract was made between his brother William.,and Wilson, but denies either approving of the cohtfaht; 'or assenting to it, though he acknowledges that- after being informed of the contract, he did, at the •request , of his brother William, point out the place ^lierte the house ought to he built. He admits that he has. obtained the, possession of the land and leased it put; but denies, having any. of Cyrus’ estate, in hi? hands; He ips'ists upon having made no contract with -Wilson, and claims the benefit of the statute against frauds and perjuries, Sic.
The circuit court decreed, that John Findley should pay out of the estate of Cyrus two hundred dollars, if so much of Cyrus’ estate remained in his hands; and if J ohn, after being served with a copy of the decree, should fail to make payment, that Wilson should recover the amount of two hundred dollars from the estate of Cyrus, and that execution should go accordingly. Cyrus was also decreed to pay costs. •
To reverse that decree this writ of error has been prosecuted
1. The most essential difference that exists between the statements of the parties, consists in John Findley's denying the contract to have been made between W ii-^am Bindley and Wilson through his advice and consent, as ^ alleged by Wilson. But whether the answer of John in that respect he true or false, the principle is not perceived, upon which the decree against Cyrus can be ^ is perfectly clear, that Join Findley de-Tived no authority from the will of William Findley, sen. to create, by contract or otherwise, any charge upon. *393 Cyrus for improving his land. By the will, ihe caré 'Cyrus’ laud during his minority was confided to John, and John may have possessed competent authority to make any contract n6t incompatible with the object and design of the testator in creating the trust. But the care of Cyrus’ land was not confided to John for the purpose of causing improvements to be made at the ex-pence of Cyrus 5 it was to enable John, during Cyrus’ minority, to use the land for the support, and the suppoi’t only, of the testator’s family. Had the alleged contract between William Findley and Wilson, therefore, been made through the assent and advice of John Findley, it ought not, and.cannot subject Cyrus to the payment Of Wilson’s claim for improvements. For by the tract, Wilson was to have been paid for improving the land, by possessing it and enjoying the profits during Cyrus’ minority; and as by the will of his father, Cyrus was not to enjoy the profits of the land until he arrived at full age, it would be palpably unjust to subject him to any claim which Wilson may have for not being permitted to occupy the land under his contract with William Findley, though the contract may have been made through the advice of John Findley.
Cyrus should . come ofaSe> in°ai!y other way than for the -that neither ’ John Findley ”F'ntl^.guar* r¿s, cóul/" any contract for th0Piand”eSo as to charge Cyrus with 1 e cos 0 1 ‘
In this,case, thelaricfbe-thfwhlj'to y John Fiñd-loy, the guar-another brother, had no authority whatever L
whore, un-j“age fo‘. a „umba, of years, im-pavements. ero made on the land, arid not executed the person" ’ who’made •t'onfsPraV°" moovor'uioir -value.
*393 2. Nor can th<^ circumstance of William Findley, with whom Wilson contracted for the lease, being the guardian of Cyrus, raise any liabilityon Cyrus for the improvements; for if, as we suppose, the will has directed the use of the land during the minority of Cyrus to da specific object, and has made John Findley the trustee to carry that object into effect, in his character of guardian, William Findley certainly possessed no authority over the land, and consequently could make no contract in relation thereto, which can form the basis of any charge against his ward.
The decree, as to Cyrus, must, therefore, be reversed.
But as the cause must be remanded to the court below, it is proper that we should direct what disposition should be made ofit as respects the interest of John F.indley.
3. And here it is proper to remark, that as the contract under which the improvements were made Wilson, was for alease for a longer term than one year, it comes emphatically within the statute against frauds and perjuries, and possesses no legal validity. Wilson^, liowever, confiding in the assurances wfeich were made *394 tliai the contract would be fulfilled, appears to hare bestowed his labor and expended his money in improving the land, and as he has not been permitted to enjoy the possession in anticipation of which the improvements were made, will have to submit to the mortifying rc^ecti°n °f having lost his labor and money, unless redress is afforded him against those by whom he was induced to enter into the contract and make the im-frovements.
t'oin a^viír causes im-improve-mouts to be land ol'his ward,by holding out that nFas"3 would be given, when, by the pro-will, no such h-asc could be lí? able' out of his own os-t-al°i0>rf th° improvo- '0 ments. ’
We (1° noip however, admit that the law affords no remedy to Wilson. In moral justice, those by whom he was induced to bestow his labor and expend his money in improving the land, ought to make adequate compensation ; and we arc incapable of perceiving the principle of law or equity, that forbids the interposition of the. chancellor in his favor. There is as- much propriety in compelling compensation for improvements made, upon land undér a parol contract for a lease, which is not fulfilled, and which, in consequence of the statute against frauds and perj uries, cannot be enforced, as there is for compelling the vender of’land by parol contract to restore to the vendee the consideration paid for the land, where he refuses to execute the contract; and relief lias often- been decreed by court^of equity in such a case.
And in the case of a parol contract for a lease, it is sa'^’ a^er a refusal of the contractor to execute the lease, he will he compelled to restore to the person with whom he contracted, the amount of money expended in necessary repairs and lasting improvements.' I ve.lio.l lo9. ¶
4. Hence it results, that wnen the cause returns to the court below, a decree must be there entered in favor of "Wilson against John Findley; for the proof is abundant to shew that although John Findley did not in fact contract with Wilson for the lease, he wasfraud-njentjy instrumental in inducing Wilson to enter upon aiid improve the land, and that Wilson’s assignee has been in fact deprived of the benefit of the contract for the act of John Findley,
The decree must be reversed with costs, the cause remanded to the court below, and a decree there enter-e(l Wilson’s bill with costs as:to Cyrus Find-ley> ancl -giving him relief against John Findley for the improvements upon the land, &c.- -